**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | | |
|---|---|---|
| CHRISTOPHER WILSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CITY OF CHICAGO, Chicago Police | ) | |
| Officers RENO BAIOCCHI, MARK RICHARDS, | ) | JUDGE HIBBLER |
| J. ORTIZ, F. BUCIO, JR., V. ALONZO, | ) | |
| MURPHY, PULLAPALLY, Chicago Police | ) | |
| Detectives JOE MCCARTHY, JAMES HENNIGAN, | ) | No. 09-CV-2447 |
| MICHAEL MILLER, K. CARNEY, J. HANIACEK, | ) | |
| E. CUNNINGHAM, M. D'ALESSANDRO, MARK | ) | |
| RICHARDS, Chicago Police Sergeant J. | ) | |
| PALLOHUSKY, and as yet unknown City of | ) | |
| Chicago Employees, | ) | |
| | ) | |
| Defendants. | ) | JURY TRIAL DEMANDED |

## AMENDED COMPLAINT

Plaintiff, CHRISTOPHER WILSON, by and through his attorneys, LOEVY & LOEVY, complains of Defendants, CITY OF CHICAGO, Chicago Police Officers RENO BAIOCCHI, Star # 21221, MARK RICHARDS, Star # 21224, J. ORTIZ, Star # 15448, F. BUCIO, JR., Star # 17633, V. ALONZO, Star # 7461, MURPHY, Star # 3297, PULLAPALLY, Star # 6238, Detectives JOE MCCARTHY, Star #20131, JAMES HENNIGAN, Star # 21115, MICHAEL MILLER, Star # 20574, K. CARNEY, Star # 60082, J. HANIACEK, Star # 20713, E. CUNNINGHAM, Star # 21159, M. D'ALESSANDRO, Star # 21015, MARK RICHARDS, Star # 21224, J. PALLOHUSKY, and as yet unknown City of Chicago Employees (collectively, "Defendants"), and states as follows:

1

**Introduction**

1.   Plaintiff Christopher Wilson was convicted, imprisoned, and sentenced to sixty years for first-degree murder, a crime he did not commit.

2.   There was no physical evidence linking Mr. Wilson with the murder.  Instead, his conviction rested on the fabricated accounts of two purported eyewitnesses, who Chicago Police Department employees had coerced into falsely inculpating Mr. Wilson.

3.   One of these witnesses recanted at trial, admitting that she did not actually observe the shooting but had falsely inculpated Mr. Wilson because the police offered to provide her free drugs, and possibly other favorable treatment, in exchange for her fabricated testimony.

4.   The second eyewitness testified against Plaintiff at trial, and on the basis of his purported observations, Plaintiff was convicted.  Since testifying, however, this witness has revealed that Chicago police officers threatened and coerced him into providing false testimony as well.  The defendants never disclosed these facts to Mr. Wilson for use at his criminal trial.

5.   Eventually, the Illinois Appellate Court reversed Mr. Wilson's conviction, without allowing a new trial, based on the lack of credible evidence supporting the conviction.

2

6.    Having now secured his freedom, Mr. Wilson brings this lawsuit to redress the injustice that was inflicted upon him.

## Jurisdiction and Venue

7.    This action is brought pursuant to 42 U.S.C. 1983 to redress the deprivation under color of law of Plaintiff's rights as secured by the United States Constitution and state law.

8.    This Court has jurisdiction of this action under 28 U.S.C. 1331 and 1367.

9.    Venue is proper under 28 U.S.C. 1391(b).  Plaintiff resides in this judicial district and Defendant City of Chicago is a municipal corporation located here.  Further, the events giving rise to the claims asserted herein occurred within this district.

## Parties

10.  Plaintiff Christopher Wilson is 28 years old.  He lives with his family in Chicago.

11.   At all relevant times, Defendants Reno Baiocchi and Mark Richards, J. Ortiz, F. Bucio, Jr., V. Alonzo, Murphy, and Pullapally were Chicago Police officers employed by Defendant City of Chicago and acting within the scope of their employment.

12.  At all relevant times, Joseph McCarthy, James Hennigan, and Michael Miller, K. Carney, J. Haniacek, E. Cunningham, M. D'Alessandro, and Mark Richards were detectives

3

with the Chicago Police Department employed by Defendant City of Chicago and acting within the scope of their employment.

13. At all relevant times, J. Pallohusky was a sergeant with the Chicago Police Department employed by Defendant City of Chicago and acting within the scope of his employment.

14. Defendant City of Chicago is an Illinois Municipal Corporation and is responsible for the acts of the Defendants while employed by the City of Chicago and while acting within the scope of their employment.

## Factual Background

15. On March 14, 2004, Dorian McGee, also known as Lavelle Lee, was shot multiple times and killed somewhere on Chicago's west side.

16. Some or all of the defendant officers and detectives canvassed the area where the shooting allegedly took place but could not locate any witnesses knowledgeable about the crime.

17. That same day, having gathered no leads, the defendants arrested Ms. Charlene Wicks for alleged drug possession. Ms. Wicks was addicted to heroin at the time. She was held in police custody without interruption for three days, until she was ultimately released on March 17, 2004, after

giving the police and an assistant state's attorney a written statement inculpating Mr. Wilson in the McGee shooting. Ms. Wicks presented this same fabricated account to the grand jury.

18. At Mr. Wilson's trial, Ms. Wicks recanted. She revealed that the defendants promised her drugs in exchange for her false testimony.

19. Defendants also procured fabricated eyewitness testimony from Ruben Pye, another area resident with no knowledge of McGee's murder. Pye testified at trial that he saw Mr. Wilson shoot Dorian McGee. Since Plaintiff's criminal trial, however, Pye has revealed that his trial testimony was fabricated at the behest of the Defendants.

20. Specifically, on or about March 19, 2004, days after McGee's death, Pye was picked up by one or more of the Defendants, under the pretense of alleged drug possession. Pye was ordered to provide inculpating testimony against Mr. Wilson, or else he would face criminal charges for drug possession. Pye told the officers that he knew nothing about the shooting. Nonetheless, coerced by the police officers' threat, Pye adopted the fabricated account. The Defendants released Pye without charging him for any offense.

21.   One or more of the Defendants also showed Pye a photograph of Mr. Wilson and ordered Pye to identify the pictured individual as the shooter.  Accordingly, Pye falsely identified Mr. Wilson in a photo line-up.

22.  On March 30, 2004, Pye selected Mr. Wilson in a live line-up.

23.   The defendants did not disclose any information about the manipulation and coercion of Pye.

24.  After a trial consisting mainly of the testimony of Wicks and Pye, Mr. Wilson was convicted.

25.  Plaintiff Christopher Wilson was convicted of first-degree murder on October 14, 2005.  Mr. Wilson, however, had absolutely no involvement in this crime.

26.  At no time before or during the trial did the Defendants disclose their relevant contacts with Ruben Pye, and in particular, the information about their manipulation of him.

27.  Because they withheld this vital, exculpatory evidence, Plaintiff was convicted of a murder he did not commit.

28.  Plaintiff was finally exonerated on May 5, 2008, and was released from the Illinois Department of Corrections on November 3, 2008.

6

## COUNT I – 42 U.S.C. § 1983
## Violation of Due Process

29. Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

30. As described more fully above, all of the Defendants, while acting individually, jointly, and/or in conspiracy, as well as under color of law and within the scope of their employment, deprived Plaintiff of his constitutional right to a fair trial.

31. In the manner described more fully above, the Defendants deliberately withheld exculpatory evidence, such as the police manipulation of witnesses that resulted in fabricated witness testimony, thereby misleading and misdirecting the criminal prosecution of Plaintiff. Absent this misconduct, the prosecution of Plaintiff could not and would not have been pursued.

32. The Defendants' misconduct also directly resulted in the unjust criminal conviction of Plaintiff, thereby denying him his constitutional right to a fair trial, in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

33.   As a result of this violation of his constitutional right to a fair trial, Plaintiff suffered injuries, including but not limited to loss of liberty and emotional distress.

34.   The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with willful indifference to Plaintiff's constitutional rights.

35.   The misconduct described in this Count was undertaken pursuant to the policy and practice of the City of Chicago in that Chicago police officers regularly fail to disclose exculpatory evidence to criminal defendants, and otherwise violate due process in the similar manner to that alleged herein. The above-described widespread practices, which are so well-settled as to constitute *de facto* policy in the Chicago Police Department, were allowed to exist because municipal policymakers with authority over the same exhibited deliberate indifference to the problem, thereby effectively ratifying it.

36.   Furthermore, the widespread practices described in the preceding paragraphs were permitted to flourish because the City declined to implement sufficient training and/or any legitimate mechanism for oversight or punishment.

## Count II –– 42 U.S.C. § 1983
### Supervisory Liability

37. Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

38. The constitutional injuries complained-of herein were proximately caused by a pattern and practice of misconduct which occurred with the knowledge and consent of those of the Defendant Officers who acted in a supervisory capacity, such that these officers personally knew about, facilitated, approved, and condoned this pattern and practice of misconduct, or else affirmatively turned a blind eye thereto without taking any steps to stop it.

39. In this way, these Defendants are personally responsible for the complained-of injuries because they knowingly, willfully, or at least recklessly caused the alleged deprivation by their actions or by their deliberately indifferent failure to act.

40. The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

41. The misconduct described in this Count was undertaken pursuant to the City's policy and practice in the manner more fully described above.

9

42.  As a result of this misconduct, Plaintiff sustained, and continues to sustain, injuries including pain and suffering.

## Count III -- 42 U.S.C. § 1983
## Conspiracy to Deprive Constitutional Rights

43.  Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

44.  After the McGee murder, the Defendants reached an agreement amongst themselves to frame Plaintiff for the crime, and to thereby deprive Plaintiff of his constitutional rights, all as described in the various Paragraphs of this Complaint.

45.  Independently, before and after Plaintiff's conviction, the Defendants further conspired to deprive Plaintiff of exculpatory materials to which he was lawfully entitled and which would have led to his more timely exoneration of the false charges as described in the various Paragraphs of this Complaint.

46.  In this manner, the Defendants conspired by concerted action to accomplish an unlawful purpose by an unlawful means.

47.  In furtherance of the conspiracy, each of the coconspirators committed overt acts and was an otherwise willful participant in joint activity.

10

48. As a direct and proximate result of the illicit prior agreement referenced above, Plaintiff's rights were violated, and he suffered financial damages, as well as severe emotional distress and anguish.

49. The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

### Count IV -- State Law Claim
### Malicious Prosecution

50. Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

51. Defendants caused Plaintiff to be improperly subjected to judicial proceedings for which there was no legitimate probable cause. These judicial proceedings were instituted and continued maliciously, resulting in injury, and all such proceedings were ultimately terminated in Plaintiff's favor in a manner indicative of innocence.

52. The Defendant officers accused Plaintiff of criminal activity knowing those accusations to be without genuine probable cause, and they made statements to prosecutors with the intent of exerting influence to institute and continue the judicial proceedings.

53.    Statements of the Defendant Officers regarding Plaintiff's alleged culpability were made with knowledge that said statements were false and perjured.  The Defendant Officers also fabricated evidence by coercing false inculpatory testimony from purported eyewitnesses. The Defendants withheld the facts of their manipulation and the resulting fabrications from the Plaintiff.

54.    The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

55.    As a result of this misconduct, Plaintiff sustained, and continues to sustain, injuries including pain and suffering.

## Count V – State Law Claim
## Intentional Infliction of Emotional Distress

56.    Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

57.    By attempting to frame Plaintiff for a crime he did not commit, and by causing Plaintiff to be maliciously prosecuted, the Defendant Officers engaged in extreme and outrageous conduct. The Defendant Officers' actions were rooted in an abuse of power or authority, and they were undertaken with intent or knowledge that there was a high probability that the

conduct would inflict severe emotional distress and with reckless disregard of that probability.

58.  As a result of the Defendant Officers' actions, described above, Plaintiff suffered and continues to suffer emotional distress.

59.  Because Defendant Officers acted within the scope of their employment with the City of Chicago, Defendant City of Chicago is liable as their employer for any resulting damages and any award of attorneys' fees.

### Count VI -- State Law Claim
### Civil Conspiracy

60.  Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

61.  As described more fully in the preceding paragraphs, Defendants, acting in concert with other known and unknown co-conspirators, conspired by concerted action to accomplish an unlawful purpose by unlawful means.

62.  In furtherance of the conspiracy, Defendants committed overt acts and were otherwise willful participants in joint activity.

13

63. The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

64. As a proximate result of Defendants' conspiracy, Plaintiff suffered damages, including severe emotional distress and anguish, as is more fully alleged above.

## Count VII –– State Law Claim
## Respondeat Superior

65. Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

66. In committing the acts alleged in the preceding paragraphs, each of the Defendant Officers were members of, and agents of, the Chicago Police Department acting at all relevant times within the scope of employment and under color of law.

67. Defendant City of Chicago is liable as principal for all torts committed by its agents.

## Count VIII – State Law Claim Indemnification

68. Each of the Paragraphs in this Complaint is incorporated as if restated fully herein.

69. Illinois law provides that public entities are directed to pay any tort judgment (other than any portion for

14

punitive damages) for which employees are liable and which were committed within the scope of their employment activities.

70.  The City of Chicago has also obligated itself by the police union contract to pay tort judgments (other than any portion for punitive damages) for which employees are liable and which were committed within the scope of their employment activities. Plaintiff is a third-party beneficiary of that obligation.

71.  The Defendant Officers are or were employees of the Chicago Police Department, who acted within the scope of their employment in committing the misconduct described herein.

WHEREFORE, Plaintiff, CHRISTOPHER WILSON, respectfully requests that this Court enter judgment in his favor and against Defendants, CITY OF CHICAGO, Chicago Police Officers RENO BAIOCCHI, Star # 21221, MARK RICHARDS, Star # 21224, J. ORTIZ, Star # 15448, F. BUCIO, JR., Star # 17633, V. ALONZO, Star # 7461, MURPHY, Star # 3297, PULLAPALLY, Star # 6238, Detectives JOE MCCARTHY, Star #20131, JAMES HENNIGAN, Star # 21115, MICHAEL MILLER, Star # 20574, K. CARNEY, Star # 60082, J. HANIACEK, Star # 20713, E. CUNNINGHAM, Star # 21159, M. D'ALESSANDRO, Star # 21015, MARK RICHARDS, Star # 21224, J. PALLOHUSKY, and as yet unknown City of Chicago Employees (collectively, "Defendants"),

15

awarding compensatory damages, costs, and attorneys' fees, along with punitive damages against Defendants in their individual capacities, as well as any other relief this Court deems just and appropriate.

**JURY DEMAND**

Plaintiff, CHRISTOPHER WILSON, hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.

RESPECTFULLY SUBMITTED,

/s/ Roshna Bala Keen
Attorneys for Plaintiff

Arthur Loevy
Jon Loevy
Michael Kanovitz
Roshna Bala Keen
LOEVY & LOEVY
312 North May Street
Suite 100
Chicago, IL 60607
(312) 243-5900